IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

EVERETT COOK,

                Plaintiff,

v.                                CIVIL ACTION NO.   5:12-cv-01113

INVESTEC, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

The Court has reviewed Plaintiff's *Motion to Remand* ("Pl.'s Mot.") (Document 6). After careful consideration of the complaint and the parties' written submissions, the Court finds that remand is not warranted.

I.     *FACTUAL BACKGROUND & PROCEDURAL HISTORY*

On May 25, 2011, Plaintiff, Everett Cook, individually and doing business as West Virginia Coal Recovery LLC, filed an Amended Complaint in the Circuit Court of Raleigh County, West Virginia, against Defendants (1) Investec; (2) George Rogers; (3) Maben Coal, LLC ("Maben"); (4) Hendricks Coal, LLC ("Hendricks"); (5) James Bay Resources Limited ("James Bay"); (6) Bovaro Partners, LLC ("Bovaro"); (7) Joseph W. Valis, and (8) Majestic Resources Development Company, LLC.   (Notice of Removal ("Notice"), Ex. B, Amended Complaint ("Am. Compl.") (Document 1-3) at 18-19).[1]   Plaintiff alleges that his "services" were "solicited"

---

[1]    Plaintiff initially commenced this civil action in the state court on April 20, 2011, with a complaint against Investec Bank PLC; Maben Coal, LLC; and Robert L. Worley, doing business as, Majestic Resources Development Company, LLC ("Majestic").   (Notice, Ex. B., Complaint (Document 1-3) at 7-13.)   The record reveals that this pleading was not served on the defendants.   (Notice, Ex. B. Docket of *Everett Cook v. Majestic Resources*

by "Defendant Investec, through its employee, agent and defendant Rogers, . . . to locate energy properties in which Investec would like to invest."   (Am. Compl. ¶ 12.)   Plaintiff contends that he entered into an agreement with Defendants Investec and Rogers to perform this service and that "[i]n exchange for [his] efforts," he would receive a 50% or equal partnership in all transactions among the parties.   (*Id.* ¶ 14.)   However, Defendants Investec and Rogers "refused to honor" the contract, but "promised Plaintiff in the alternative a finder's fee, or commission." (*Id.* ¶ 16.)   As a result of this promise, Defendants Investec and Rogers agreed that Plaintiff would be given a "15% ownership of any new company, plus one dollar ($1.00) a ton royalty on all coal produced by the new company, and a $2,000,000 finder's fee." (*Id.* ¶ 17.)   Plaintiff alleges that he fully performed under the contract; investigated energy properties; expended monies "chartering airplanes and helicopters" to provide "Investec's personnel" with views of the properties; showed "Investec and its agents numerous energy properties in West Virginia, Kentucky and Tennessee;" "recommended properties for sale or lease" and cautioned Defendant Investec against others; and arranged for a meeting between Defendant "Rogers, on behalf of Investec" and a coal-producing property.   (*Id.* ¶¶ 18-20, 23.)   Specifically, Plaintiff alleges that he investigated a coal producing property owned by Western Pocahontas Properties, Ltd., of Huntington, West Virginia (known as Natural Resource Partners or NRP), and learned that it was leased to Majestic, Robert Worley and/or entities under Worley's control.   (*Id.* ¶¶ 21-22.)   Plaintiff introduced Defendant Rogers "on behalf of Investec" to Worley "to discuss a sale of the lease and/or the [Western Pocahontas] [P]roperties."   (*Id.* ¶ 23.)   Plaintiff alleges that he was thereafter "wrongfully excluded from all future meetings and negotiations"; that after this exclusion Defendants Investec and Rogers began

---

*Development*, Civil Action 11-C-315 (Document 1-3) at 3.)

to bring other parties into the NRP deal, including Defendants Hendricks, James Bay, Bovaro, Valis, Worley and Maben; and that as a "result . . . the proposed deal [wherein NRP as the owner and Worley as the lessor agreed to sell the Western Pocahontas Property to Investec] was consummated among NRP, Worley, Maben, Rogers and Investec."  (*Id.* ¶¶ 25, 27-38.)   Plaintiff alleges that "Rogers, on behalf of Investec, wrongfully appropriated information provided . . . by [him] under the contract with [D]efendant Investec, and purchased the leases in partnership with [D]efendant Maben[.]"  (*Id.* ¶ 41.)   According to Plaintiff, "[D]efendant Rogers bought coal leases from [D]efendant Majestic"; that absent Plaintiff's efforts the deal would not have been possible; that Defendants Maben, Majestic, Hendricks, Bovaro and James Bay "wrongfully and tortuously interfered with his contract with Defendants Investec and Rogers;" and that Defendants Investec and Rogers did not pay him for his services pursuant to the contract or promise. (*Id.* ¶¶ 28-36, 39, 42-43, 50-51, 54.)   Moreover, Plaintiff alleges that his contract with Defendant Investec included the implied covenants of good faith and fair dealing; both Investec and Rogers breached those covenants; Investec and Rogers made "statements and representations" to him "to induce him to enter into and then to perform under the contract" which were "false and misleading in that [D]efendants Investec and Rogers had no intention of performing the agreement[,]" and that he "was unaware of [D]efendant[s] Investec and Rogers' true intentions and could not reasonably have discovered them until he had already performed under the contract." (*Id.* ¶¶ 45-47.)

As a result of the foregoing, Plaintiff asserts three causes of action:   two breach of contract claims against Defendants Investec and Rogers and a claim of tortious interference with a business relationship or expectancy against Defendants James Bay, Bovaro, Valis, Maben, Majestic and Hendricks. (*Id.* ¶¶ 58-96.)   Plaintiff seeks "all amounts to which he is due under the contract,

3

including expenses, together with interest," "all amounts to which he is due as a finder's fee, or commission," compensatory damages, including mental and emotional distress, punitive damages, other special and general damages, and reasonable attorney fees.   (*Id*. at 30.)

Thereafter, Plaintiff sought to withdraw his claims against Defendant Majestic.   On April 5, 2012, the Circuit Court dismissed Majestic from the case. (Notice, Ex. A. Order of Withdrawal and Dismissal of Defendant ("April 5, 2012 Order") (Document 1-2)).   On April 12, 2012, Defendants Investec, Maben, Hendricks, Bovaro, Valis and Rogers removed this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 by invoking this Court's diversity jurisdiction. (Notice at 1.)[2] These Defendants assert that because Majestic, the diversity destroying party, was dismissed from the case, the state court's Order of April 5, 2012, became the "other paper" from which it was first ascertainable that the case was removable. (Notice at 2.) Consequently, Defendants assert that the jurisdictional amount in controversy, required by 28 U.S.C. § 1332, is satisfied by the Plaintiff's claim for relief relative to the purported $2,000,000 finder's fee, and that each Defendant has citizenship that is diverse from Plaintiff.

The record reveals that Defendants removed this action within thirty days of receipt of the April 5, 2012 Order, as required by 28 U.S.C. § 1446(b). (Notice at 2.)   Plaintiff timely filed his motion to remand, pursuant to 28 U.S.C. § 1447(c), to assert that Defendants have failed to establish complete diversity among the parties and to seek reasonable fees and costs for Defendants' objectively unreasonable removal.   (Pl.'s Mot. at 2.).   The motion has been briefed

---

2    Defendants James Bay and Rogers have not been served.   (*See* Response to Plaintiff's Motion to Remand ("Defs.' Resp.") (Document 10), 6, n.2) ("Rogers has never been served and is not technically a party to this litigation.")   Notwithstanding the same, Defendants included Rogers as a party to its removal notice.   (Notice at 1.) The Court will consider the inclusion of Rogers therein as an error.

and is ripe for consideration.

## II.    APPLICABLE LAW

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction.    28 U.S.C. § 1441(a).[3]    This Court has original jurisdiction of all civil actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.    28 U.S.C. § 1332(a)(1)-(2).    Generally, every defendant must be a citizen of a state different from every plaintiff for complete jurisdiction to exist.    Diversity of citizenship must be established at the time of removal. *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441.[4]    Section 1446 requires that, "[a] defendant or defendants desiring to remove any civil action . . . from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal[.]"    28 U.S.C. § 1446(a).    Additionally, Section 1446 requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading.    However, as is

---

3    Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

4    The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.L. No. 112–63, § 1, 125 Stat. 758 (2011) amended several provisions of Title 28, including Section 1446. However, this Act became effective upon the expiration of the 30-day period (beginning on the date of the enactment December 7, 2011) and applies only to those actions or prosecutions commenced on or after such effective date.    Plaintiff commenced this action in the Raleigh County Circuit Court on April 20, 2011. Therefore, the Act does not apply to this case.

relevant in this case, Congress has also provided that where an initial pleading is not removable as originally filed, but subsequently becomes subject to removal through some later event:

> [A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. §1446(b).  Because the filing requirements contained in 28 U.S.C. § 1446 are mandatory, there is no federal jurisdiction when one of the defendants fails to join in, file his own, or officially and unambiguously consents to, a removal petition within 30 days of service. *Wilkins v. Corr. Med. Sys.*, No. 90-7155, 1991 WL 68791, at *2 n.2 (4th Cir. May 3, 1991) (unpublished) (citations omitted); *see Constantin v. Fogle*, Civil Action No. 5:09CV129, 2010 WL 174112, at * 1 (N.D. W. Va. Jan. 15, 2010) ("While the removal statute does not explicitly require all defendants to join in the removal, it is well established that in a multi-defendant case, effective removal requires that all defendants consent to removal.") (citations omitted).  The Court notes that "a co-defendant is not required to join or consent if it has not been served with the initial pleadings at the time the notice of removal is filed."  *Shaffer, M.D., v. Northwestern Mutual Life Ins. Co.*, 394 F.Supp. 2d 814, 819 (N.D. W. Va. 2005) (citing *Ogletree v. Barnes*, 851 F.Supp. 184, 187 (E.D. Pa. 1994).

It is the long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter.  *Strawn et al. v. AT &T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148,

151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted).   Accordingly, in this case, the removing defendants have the burden to show the existence of diversity jurisdiction by a preponderance of the evidence.   *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481,488 (S.D. W. Va. 2001)).   In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction."   *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

### III.   DISCUSSION

Plaintiff does not challenge the timeliness of Defendants' removal, that all served Defendants joined in the removal, that the state court's April 5, 2012 Order is an "other paper" as contemplated by Section 1446, or that the requisite jurisdictional requirement is satisfied by his claims.[5] However, Plaintiff disputes the invocation of this Court's diversity jurisdiction by contending that Defendants have alleged, but failed to offer "concrete proof or probative evidence" that complete diversity exists as between the parties.   Specifically, Plaintiff challenges the evidence offered by Defendants in support of the citizenship of Defendants Rogers, Investec, James Bay, Maben, and Hendricks.[6]   (*See* Reply Memorandum in Support of Motion to Remand ("Pl.'s Reply") (Document 21) at 5-19.)   Based on Defendants' alleged failure to support their

---

5    (*See* Am. Compl., ¶¶ 17, 73) (Plaintiff alleges he was to be paid a finder's fee of $2,000,000).   The sum claimed by a plaintiff in the complaint generally controls the amount in controversy determination. *JTH Tax, Inc. v.. Frashier*, 624 F.3d 635, 638 (4th Cir.2010). Therefore, the record in this case clearly reveals that the amount in controversy satisfies the jurisdictional requirement of 28 U.S.C. § 1332.

6    Plaintiff properly does not contest the factual support evincing the citizenship, in locations outside West Virginia, relative to Defendants Bovaro and Valis. Consequently, the Court will not discuss the parties' assertions relative thereto.

assertions of citizenship in the Notice of Removal, Plaintiff argues that remand is warranted. There is no dispute that Plaintiff, individually, and as a member of West Virginia Coal Recovery, LLC, is a citizen of West Virginia.   Therefore, if any defendant is also a West Virginia citizen, this court lacks subject matter jurisdiction.   To determine the citizenship of a party for the purposes of diversity jurisdiction, a court must consider the nature of the party and the applicable law governing the definition of citizenship.   The citizenship determination is made as of the date of the filing of the complaint and the notice of removal.   There are at least three types of Defendants included in this action for diversity purposes. Therefore the Court will discuss each type separately.

### 1.  Individual Defendant

In the Notice of Removal, Defendants allege that George Rogers "is a foreign individual" with a "domicile in the United Kingdom." (Notice at 4.)   In opposition to the motion to remand, Defendants submit the affidavit of Defendant Rogers, wherein he attests that he is: (1) one of the directors of Hendricks Resources Limited and Appleton Resources Limited; (2) Head of Resource Finance for Investec Bank PLC; (3) "a citizen of the United Kingdom since birth"; and (4) is not "a citizen nor permanent resident of the United States.   (Defs.' Ex. B, Affidavit of George W. Rogers ("Rogers Aff.")(Document 10-2) at 1.)   Attached to the exhibit is a copy of a page of Mr. Rogers' passport denoting his nationality as a "British Citizen." (*Id*. at 3.)

An individual's citizenship, for purposes of diversity jurisdiction, is determined by whether he is a citizen of the United States or admitted to the United States for permanent residence and is a domiciliary of a State. *See Johnson v. Advance America*, 549 F.3d 932, 937 n. 2 (4th Cir.2008). However, pursuant to 28 U.S.C. § 1332(a), "an alien admitted to the United States for permanent

residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a).   An individual's domicile is established by "physical presence, coupled with an intent to make the State a home." (*Id.*); *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citations omitted).   A person will acquire a "domicile of origin" at birth and will maintain that domicile until a new one is obtained. *Id*.   "Once a person establishes his domicile, the law presumes that it continues there until subsequent facts establish otherwise."   *Ronald Lane, Inc. v. Antero Res. Appalachian Corp.*, Civil Action No. 1:10CV137, 2011 WL 3102116,*4 (N.D. W. Va. July 25, 2011) (citing *Mitchell v. United States*, 88 U.S. 350, 352–53 (1874). "A court may consider several, non-exclusive factors in making a domicile determination: (1) current residence; (2) voting registration and voting practices; (3) location of personal and real property; (4) location of brokerage and bank accounts; (5) place of employment or business; (6) driver's license and automobile registration; (7) payment of taxes; and (8) location of family."   *Sonoco Products Co. v. Guven*, Civil Action No.4:12-cv-00790, 2012 WL 4322521,* 2 (D.S.C., Sept. 19, 2012) (citations omitted).

Plaintiff argues that Defendant Rogers has failed to provide his place of domicile inasmuch as he has failed to provide his home address.   Plaintiff asserts that Rogers' statement of citizenship is insufficient to establish his domicile because it "leaves open the possibility that he is a temporary resident of the [United States.]"   (Pl.'s Reply at 6.)   Plaintiff does not assert why this *possibility* is material to the Court's analysis since he has failed to present any evidence indicating that Defendant Rogers is a United States citizen.   Moreover, there is no evidence in the record that as an "alien," as that term is used in Section 1332, Defendant Rogers has been admitted to the United States for permanent residency.   (*See* 28 U.S.C. § 1332.)   Plaintiff's concern merely

9

contests what he believes is a missing address for Defendant Rogers.  However, Plaintiff's concern is diminished by an exhibit attached to the Affidavit of James D. R. Strauss, one of the Directors for Appleton Resources Limited.  (*See* Defs.' Ex. J, Affidavit of James D.R. Strauss (Document 10-10) at 3.) As Plaintiff acknowledges, in this exhibit, an address is provided for George Rogers as "Green Ridges, Churt Road, Hindhead Surrey, GU 26 6HY United Kingdom." Plaintiff has not presented the court with any evidence that this address does not exist or is in some manner inaccurate.  Therefore, Defendant Rogers has attested, without a sufficient challenge from Plaintiff, that he is not a permanent resident of the United States and that he remains a citizen of the United Kingdom.  Indeed, there is no evidence in the record that suggests Defendant Rogers is a citizen in West Virginia, has a physical presence in this state (or any other state in this country), and has the intent to maintain that physical presence.  The Court appreciates that the information provided by Defendant Rogers could have been more detailed, (*see Guven*, 2012 WL 4322521,* 2).  However, the Court finds that viewing the evidence before it, Defendants have sufficiently demonstrated by a preponderance of the evidence that Defendant Rogers is not a citizen of West Virginia.

## 2. *Corporate Defendants*

For the purposes of diversity jurisdiction, "a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business." *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011); 28 U.S.C. § 1332(c)(1); *Slavchev v. Royal Caribbean Cruises, Ltd*, 559 F.3d 251, 254 (4th Cir. 2009) (applying Section 1332(c)(1) to foreign corporation).  The Supreme Court has explained that the phrase "'principal place of business' refers to the place where the corporation's high level officers direct,

control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1193. (2010). The Court further described that the "principal place of business" is

> the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

(*Id*. at 1192). In its discussion of the rationale for selecting such a straightforward test for corporate citizenship, the *Hertz* Court explained that Section 1332(c)(1) supports the "nerve center" inquiry. The Court stated that that statute's use of the word "'place'" follow[ing] the words 'State where' means that the 'place' is a place within a State. It is not the State itself." *Hertz Corp*., 130 S.Ct. at 1192-93. Further, "[a] corporation's 'nerve center,' usually its main headquarters, is a single place. The public often (though not always) considers it the corporation's main place of business. And it is a place within a State." *Hertz Corp*., 130 S.Ct. at 1192 -93. In *Hertz*, the Supreme Court stated that "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp*. 130 S.Ct. at 1194-95. (citations omitted). The Court cautioned the lower courts that "if the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." *Hertz Corp*., 130 S.Ct. at 1194 -1195.

With this law in mind, this Court has considered the allegations and assertions relative to the citizenship of Defendant corporations Investec and James Bay Resources, and finds that

Defendants have shown by a preponderance of the evidence that these entities do not have citizenship in West Virginia.

First, with respect to Investec, Plaintiff alleged in his Amended Complaint that this Defendant has its primary office in the United Kingdom (London, England) and does business in West Virginia. (Am. Compl.¶ 2.)   In their Notice of Removal, Defendants allege that Investec is "a foreign corporation duly organized and incorporated under the laws of and with its principal place of business in the United Kingdom."   (Notice at 3.)    In support thereof, Defendants have presented the affidavits of Kevin McKenna, Executive Director of Investec Bank PLC, and David van der Walt, Director and Chief Executive Officer. (Defs.' Resp., Ex. A, Affidavit of Kevin McKenna ("McKenna Aff.") (Document 10-3); Defs.' Resp. Ex. A, Affidavit of David van der Walt ("Van Der Walt Aff.") (Document 10-4)).   These May 25, 2012 affidavits are substantially identical and assert that Investec's corporate directors and officers "are located in the United Kingdom" which is "where they control and coordinate Investec's activities;" the officers and directors "set[] corporate policy," "oversee[] significant corporate decisions," "direct and control the corporation's activities," but do not "necessarily oversee the day-to-day operations." (McKenna Aff. ¶¶ 5-8; Van Der Walt Aff. ¶¶ 5-8).   The affiants further stated that they "primarily perform [their] duties at Investec's headquarters in the United Kingdom, which is also where each of [the corporate officers and directors] maintains an office and where [they] hold [their] board meetings." (McKenna Aff. ¶ 9; Van Der Walt Aff. ¶ 9).   Defendants also proffer Investec's Certificate of Incorporation demonstrating Investec Bank PLC's incorporation on January 23, 2009. (Defs.' Resp. Ex. E, Certificate of Incorporation on Change of Name and Re-registration of a Private Company as a Public Company (Document 10-5)).

12

Plaintiff argues that Defendants' demonstration of Investec's citizenship as the United Kingdom is insufficient in that the affidavits are identical and fail to demonstrate that the headquarters is the nerve center (or the center of direction, control and coordination) and not simply a place where the corporation holds its board meetings. (Pl.'s Reply at 9.)   The burden of demonstrating citizenship by a preponderance of the evidence remains with the Defendants. The Court finds that as to Investec, the Defendants have offered some evidence that Investec is incorporated and has its principal place of business in the London, England.   Plaintiff has not offered any evidence to support his challenge.   Plaintiff's challenge is a mere argument revealing his suspicion, and nothing more, that "some unknown portion of Investec's day-to-day activities [are] overseen at a place or places other than [the location in London, England]."   (Pl.'s Reply at 9.)   The unfounded suggestion contradicts the assertions of two of Investec's directors and officers.   Without more, Plaintiff cannot successfully argue that Defendants failed to prove by a preponderance of the evidence that Investec's citizenship is in London, England, not West Virginia.   Consequently, the Court finds that this Defendant is diverse from Plaintiff.

The Court turns now to the unserved Defendant, James Bay.   Defendants assert that James Bay is a citizen of Canada for the purposes of diversity jurisdiction because it is a foreign corporation duly organized and incorporated under the laws of, and with its principal place of business in, Canada. (Notice at 5.)   In support of this assertion, Defendants offer a screen view of Defendant James Bay's website that identifies this Defendant's "head office address" as "20 Victoria Street, Suite 800, Toronto, Ontario." (Defs.' Resp. Ex. F (Document 10-6) at 2.) Additionally, Defendants offer the "James Bay Resources Limited Management's Discussion and Analysis" report for years ended December 31, 2011 and 2010, prepared on April 26, 2012. (*Id.* at

13

3-28).  In this report, James Bay is described as "a junior resource company focused on the acquisition and exploration of base and precious metal mineral properties, with activities centered in Canada."  (*Id*. at 4.)   The company is further described as having "exclusive rights in the mining claims" in certain areas of Canada and an exploration agreement to identify "potential oil and gas acquisition targets in Nigeria."  (*Id*.)  In explanation of the company's "history and corporate structure," it is revealed that the company was incorporated in November 2007 and removed the restrictions on the issue, transfer or ownership of its shares in June 2008.   The report further includes the Company's financial statements.

Plaintiff agrees that this is a "Canadian Company with headquarters in Toronto, Canada." (Pl.'s Reply at 10).   However, he argues that Defendants have failed to "establish for jurisdictional purposes that the premises at 20 Victoria Street constitute 'the actual center of direction, control, and coordination, i.e., the nerve center and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion.'") (Pl.'s Reply at 10) (citing *Hertz Corp*., 130 S.Ct at 1192.)   The Court finds Plaintiff's assertion in this regard disingenuous, particularly where he has alleged that "Defendant James Bay . . . is a company organized under the laws of Canada, has its principal place of business in Toronto, Ontario, Canada and does business in the State of West Virginia." (*see* Am. Compl. ¶ 6)).   In this regard, the Court finds that there is no real dispute that the citizenship of this Defendant is Canada.

### 3.  LLC Defendants

Since this Court has concluded that neither the individual defendant, nor, the two corporate entities are citizens of West Virginia, this Court's jurisdiction can only be found lacking if the final

14

two limited liability companies are determined to be citizens of West Virginia.   In their Notice of

Removal, Defendants assert that at the time of commencement of this civil action and the removal,

Maben and Hendricks were both limited liability companies organized under the laws of

Delaware.   However, the Court's inquiry does not stop here.   The citizenship of a limited liability

company is determined by the citizenship of all of its members, for diversity of jurisdiction

purposes. *Central West Virginia Energy*, 636 F.3d at103 (citing *Gen. Tech. Applications, Inc. v.

Exro Ltda*, 388 F.3d 114, 121 (4th Cir.2004)).   "When diversity jurisdiction is invoked in a case in

which a limited liability company is a party, the court needs to know the citizenship of each

member of the company.   And because a member of a limited liability company may itself have

multiple citizenships – the federal court needs to know the citizenship of each 'sub-member' as

well." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).   To this

end, Defendants assert that Maben has only one member, Appleton Coal, LLC. Likewise,

Appleton Coal, LLC, is alleged to have only one member, Appleton Resources Limited

("Appleton Res."), a foreign corporation. (Notice at 4.)   Similarly, Hendricks has only one

member, Hendricks Resources Limited ("Hendricks Res."), a foreign corporation.   (*Id.*)

Therefore, the citizenship of Defendants Maben and Hendricks will be determined by the

citizenship of these two corporations.

　　　　As discussed above, a corporation "shall be deemed to be a citizen of any State by which it

has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. §

1332(c)(1).   Defendants assert that these two corporations are incorporated under the laws of

Jersey Island, one of the Channel Islands, and that the principal place of business for each is in the

United Kingdom.   (Notice at 4-5); (*see* Rogers Aff. at 1) (discussing membership of Hendricks

15

and Maben).   In support of the asserted locations of incorporation, Defendants present the affidavit of Defendant Joseph W. Valis, Managing Director of Maben Coal, LLC, Appleton Coal, LLC, and Hendricks Coal, LLC. (Defs.' Resp., Ex. A, Affidavit of Joseph W. Valis ("Valis Aff.") (Document 10-1) at 2) (attesting to the membership of Maben and Hendricks and stating that both Appleton Resources and Hendricks Resources are organized and incorporated under the laws of Jersey Island.).   Additionally, Defendants submit a document purported to be evidence of Appleton Resources' incorporation from the Jersey Financial Services Commission dated January 26, 2011. (Defs.' Resp., Ex. I, Certificate of Incorporation of a Limited Company (Document10-9); *see also* Defs.' Resp., Ex. L, Certificate of Incorporation of a Limited Company (Document10-12) (certification of incorporation of Hendricks Res. as a private company on December 30, 2010)).

Further, Defendants also proffer the affidavit of James Strauss, Director of Appleton Resources, to support its assertion that the "headquarters and principal place of business" for Appleton Resources "is in the United Kingdom."   Affiant Strauss states that Defendant George Rogers and Eike Von der Linden join him as corporate directors of Appleton Resources; that this entity "does not have any corporate officers;" and that the directors are "responsible for setting corporate policy and overseeing significant corporate decisions." (Strauss Aff. at 1.)   According to Mr. Strauss, he and the other two corporate directors "primarily perform [their] duties . . . in the United Kingdom, which is also where [they] hold . . . board meetings." (*Id.*)   Relative to Hendricks, Defendants present the substantially identical affidavit of Andrew Clapham, Director of Hendricks Resources, wherein the affiant acknowledges that Hendricks Resources does not have any corporate officers. (Defs.' Resp., Ex. M, Affidavit of Andrew Clapham ("Clapham Aff.")

16

(Document 10-13)).   However, it has five other corporate directors, namely, Defendants George Rogers and Joseph Valis, Andrew Charles Watkins-Ball, R. William West and Julian Alexander McIntyre.   (*Id*).   According to Mr. Clapman, Hendricks Resources directors do not necessarily oversee the day-to-day operations of the corporation, but the directors are "responsible for setting corporate policy and overseeing significant corporate decisions;" "direct and control the corporation's activities;" and "primarily perform [their] duties . . . in the United Kingdom, which is also where [they] hold . . . board meetings."   (*Id*.)

Plaintiff argues that Defendants' demonstration of citizenship as to these two corporations is deficient inasmuch as the affiants failed to state an address for the entities' principal place of business within the United Kingdom.   (Pl.'s Reply at 13.)   Plaintiff contends that the only address in the record relative to Appleton is that found on an attachment to the Strauss Affidavit which lists a non-United Kingdom address.   Specifically, Plaintiff contends that the evidence reveals a Jersey Island address for Appleton of "28-30 The Parade, St. Heller, Jersey JE1 1EQ." Plaintiff argues that to the extent Defendants assert the principal place of business is in the United Kingdom, this Jersey Island address is insufficient because Jersey Island is not part of the United Kingdom. (*Id*.)   A detailed inspection of the Register of Directors and Officers document containing the disputed address (*see* Defs.' Resp. Ex. J) reveals that it is the address for the Corporate Secretary.   Moreover, Plaintiff contends that Defendants must present something more than "[a] casual, throwaway reference to the United Kingdom" as its principal place of business since the United Kingdom includes England, Scotland, Wales and Northern Ireland. (*Id*. at 15.) However, this Court finds that whether the address of the principal place of business can be said to be in Jersey Island or the United Kingdom, the principal place of business is not in West Virginia.

17

Plaintiff asserts that Defendants' evidence in support of the Hendricks Resources is equally unavailing.   However, this Court finds that Defendants have shown, through the afore-mentioned affidavits, some evidence that the United Kingdom is the principal place of business for these corporations.   There is no evidence in the record that would suggest otherwise.   (*See* Defs.' Resp. Ex. P, Carbon Resources Development Inc.'s Surface Mine Application ("Surface Mine Application") (Document 10-16)) (listing an address for Appleton Resources as Walker House, 28-34 Hill Street, St. Helier, Jersey.)   The Court is not persuaded by Plaintiff's argument that these entities have a principal place of business in Charleston, West Virginia, merely by the inclusion of a West Virginia address on the Surface Mine Application.[7]   Just as the Defendants assert, this inclusion of the same address by various business entities does not establish a principal place of business, but plausibly establishes a local mailing address for a foreign corporation.   The Court has not been presented with any conflicting evidence of a specific corporate office, where these corporations direct, control or coordinate the corporation's business, being located in Charleston, West Virginia.   Absent conflicting information, the Court finds that Defendants have shown that the citizenship for Maben and Hendricks are based on the citizenship of its sub-members Appleton Resources and Hendricks Resources. These entities were incorporated under the laws of the Jersey Island and have a principal place of business in the United Kingdom.

---

[7]    The Court has reviewed the Surface Mine Application and finds the following on the last page of the exhibit:

> Carbon Resources Development, Inc. (applicant) is owned 100% by Maben Coal, LLC. Maben Coal, LLC is owned 100% by Appleton Coal, LLC, which is owned 100% by Appleton Resources, Limited. Appleton Resources, Limited is owned 100% by Guinness Mahon & Co., which is owned 100% by *Investec Bank, PLC.

(Defs.' Resp. Ex. P at 13.)   The representations of the foregoing are inconsistent with Defendants' affidavits to the extent Guinness Mahon & Co. is listed as 100% owner of Appleton Resources, Limited. However, the Court finds this representation immaterial in that Investec Bank is indicated as Guinness Mahon & Co.'s owner. The Court has previously considered the citizenship of Investec Bank herein and found the corporation to be a citizen of the United Kingdom.

18

Therefore, after careful consideration of the foregoing, the Court finds that none of the Defendants in this matter is a citizen of West Virginia and, thus, complete diversity exists. Consequently, the Court finds that Plaintiff's motion to remand must be denied.

### VI.     CONCLUSION

For the reasons stated above, the Court does hereby **ORDER** that Plaintiff's *Motion to Remand* (Document 6) be **DENIED**.   Further, the Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to all counsel of record and to any unrepresented party.


ENTER:    March 14, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA